**Skye Crystal LASTELLA, Ph.D., Petitioner**

v.

**BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, STATE BOARD OF PSYCHOLOGY, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 30, 2008.

Filed Aug. 12, 2008.

G. Thomas Miller, Dillsburg, for petitioner.

Judith Pachter Schulder, Counsel and Gerald S. Smith, Sr. Counsel in Charge, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, PELLEGRINI, Judge, and COHN JUBELIRER, Judge.

OPINION BY Judge McGINLEY.

Skye Crystal LaStella, Ph. D. (Petitioner), petitions for review from the final Adjudication and Order of the Pennsylvania State Board of Psychology (Board of Psychology) which denied her application for a License to Practice Psychology. The order was issued by the Board of Psychology after hearing on March 27, 2007, on Petitioner's appeal from the preliminary denial of her application.

Petitioner, a resident of Nazareth, obtained her Bachelor of Science degree in Psychology in 1998 from East Stroudsburg University. She obtained her Masters of Science degree from Capella University (Capella) in Minneapolis, Minnesota on March 29, 2001, and was awarded a doctoral degree from Capella on August 31, 2004, in Clinical Psychology.

On December 8, 2005, Petitioner filed an application to practice psychology with the Board of Psychology. In a letter dated November 22, 2006, the Petitioner's application was preliminarily denied. In pertinent part, the letter stated:

The Board reviewed your Application for a License to Practice Psychology at its November 20–21, 2006 meeting. The Board has preliminarily denied your application because your Ph.D. degree from Cappella [sic] University does not meet the following definition of a 'doctoral degree in psychology' found in § 41.1[1] of the Board's regulations: '(xii) Has a residency requirement that each degree candidate complete a mini-

1. 49 Pa.Code § 41.1, lists eleven criteria which must be met when a psychology degree is not from a program accredited by the American Psychological Association (APA) or designed by the Association of State or Provincial Psychology Boards (ASPPB):
   -Offers training in an accredited college or university,
   -Is clearly identified and labeled as a psychology program, wherever it is administratively housed. Pertinent institutional catalogs and brochures shall specify the intent of the program to educate and train professional psychologists,
   -Stands as a recognized sequence within the overall program or department,
   -Clearly demonstrates authority and primary responsibility for the required core program and specialty areas and for the admission, evaluation and recommendation for students for degrees, whether or not the degree program cuts across administrative lines,
   -Comprises an integrated, organized sequence of study,
   -Has an identifiable psychology faculty who provide basic instruction in psychology and a psychologist who is responsible for the program,
   -Has an identifiable body of students who are matriculated in the program for the purpose of qualifying for a degree,
   -Provides in its core program required instruction in ethics as they relate to scientific methods and professional standards, research and design and methodology, statistics and psychometrics. In addition, requires students to demonstrate competence in each of the following four substantive content areas (this criterion will typically be met by requiring a minimum of three graduate semester hours in each area): biological bases of behavior—for example, physiological psychology, comparative psychology, neuropsychology, sensation and perception, psychopharmacolo-

mum of two consecutive academic semesters as a matriculated student physically present at the institution granting the degree . . .'.

Letter from Chris Stuckey, Board of Psychology Administrator, to Skye Crystal LaStella, November 22, 2006, at 1; Reproduced Record (R.R.) at 136a.

The letter also informed Petitioner of her right to appeal the preliminary determination. Petitioner requested a hearing, which was held on March 27, 2007. At the hearing, Petitioner defended Capella's curriculum and explained how, in her estimation, it complied with the spirit of the residency requirement by fostering the same kind of discussion and interaction among peers and professors. Petitioner testified:

Capella had it set up—it was more or less a discussion forum, so the professor would do an initial presentation and then there was 10 weeks in a course, so that was considered 10 units. And there was two discussion questions for each unit, so he would—or she would post the discussion question, say, number one, and then you had until Wednesday evening to respond to that posting, which is, like, a mini essay with research and literature, you know, to back your posting up. And then you had to respond to a minimum of two other learners in the class, also, so there was pretty much constant didactic interaction that way. It wasn't just you post your question and then you're done.

Notes of Testimony (N.T.), March 27, 2007, at 19; R.R. at. 167a.

Petitioner also offered the testimony of Dr. Robert Schnedler (Dr. Schnedler), the Chair of Clinical Specialization in the School of Psychology at Capella. Dr. Schnedler outlined the educational experience that a psychology Ph.D. candidate receives at Capella, and how it operates as a facsimile for physical presence at a facility:

A number of face-to-face, formal and informal instruction, that includes the labs as well as the meals, times with instructions otherwise, is 500 (hours) face-to-face. And we estimate that, in the Year in Residence, you're required to take a minimum of 30 hours online, that you should be enrolled for a minimum of 30 hours. The reason for that, again, is to capture the essence of what a person does when they attend a university. They're going to classes and you're going to labs. You're running into professors. You're working. So we would not allow, for example, a person to go through the Year in Residence just attending the weekends in isolation without having this important coursework. So the—and we estimate another 750 hours would account for the time spent in the coursework, which, again, is a scholarly pursuit, obviously, writing the mini essays and studying.

N.T. at 87; R.R. at 235a

The Board of Psychology presented no witnesses but introduced Petitioner's appli-

gy; cognitive-affective bases of behavior—for example, learning, thinking, motivation, emotion; social bases of behavior—for example, social psychology, group processes, organizational and systems theory; individual differences—for example, human development, personality theory, abnormal psychology,
-Includes supervised practicum, internship, field or laboratory training appropriate to the practice of psychology,

-Requires degree candidates to complete combined total of at least 60 graduate semester hours in the areas described in subparagraphs (viii)-(x), and
-*Has residency requirement that each degree candidate complete a minimum of two consecutive academic semesters as a matriculated student physically present at the institution granting the degree* (emphasis added).

cation and academic record. The Board of Psychology made the following relevant findings of fact:

4. Applicant (Petitioner) participated in Capella's Year–in–Residency Program which required that she be physically present for 51 days at Capella:

a. A 2–week Extended Seminar in June 2001,

b. 9 Focused weekend Seminars, 1 per month, from October 2001 through June 2001, and

c. A 2–week Extended Seminar in June, 2002.

5. The Focused weekend Seminars consisted of classroom learning from noon to 5:00–6:00 p.m. on Fridays, 8:00 a.m. to about 5:00–6:00 p.m. on Saturdays and 8:00 a.m. to about 2:00 p.m. on Sundays.

6. During the last Extended Seminar of the Year–in–Residency, the students had their portfolio review.

7. Applicant (Petitioner) was physically present at Capella for approximately 500 hours during the Year–in–Residence.

8. Physical presence accomplishes three objectives: To teach clinical competence, assessing the student for fitness to practice, and socialization in the profession.

9. The Year–in–Residency focused on clinical competency.

10. Different faculty members attended different weekend sessions.

11. Aside from when she was physically present at Capella, Applicant's (Petitioner's) contacts with professors and students were over the internet through twice-weekly discussion question postings.

12. Capella's on-line courses are asynchronous.

13. Professors and students responded to postings weekly.

14. *At the time Applicant (Petitioner) attended Capella, its doctoral degree program in Clinical Psychology was not accredited by the American Psychological Association or designated by the Association of State and Provincial Psychology Boards* (emphasis added).

Adjudication and Order of the State Board of Psychology (Board's Adjudication), December 19, 2007, Findings of Fact (F.F.) Nos. 4–14 at 2–3; Certified Record Vol. III.

On December 19, 2007, the Board of Psychology denied the application of Petitioner and concluded:

In that Applicant's (Petitioner's) residency was not 'a minimum of two consecutive academic semesters as a matriculated student physically present at the institution granting the degree' as required in the definition of 'doctoral degree in psychology' in Section 41.1(xii) of the Board's regulations, 49 Pa.Code § 41.1(xii), Applicant has not met the requirements for licensure in section 6(a) of the Act, 63 P.S. § 1206(a).

Board's Adjudication, December 19, 2007, Conclusions of Law (C.L.) No. 3 at 4; Certified Record Vol. III.

### I. Whether the Board of Psychology Failed to Adequately Explain Why It Rejected Petitioner's Evidence?

■ Petitioner contends[2] that the Board of Psychology failed to consider competent and "overwhelming" evidence

---

**2.** In reviewing an order from the Board of Psychology, this Court may only determine whether necessary findings of fact are supported by substantial evidence or whether it committed an error of law or an abuse of discretion. *Giddings v. State Board of Psychology,* 669 A.2d 431 (Pa.Cmwlth.1995).

that established that she was qualified for licensure in Pennsylvania.[3]

Contrary to Petitioner's argument, the Board did evaluate her testimony in its entirety and rejected it:

> As the Board has explained in repeated Adjudications and Orders, the purpose of the residency requirement is to guarantee that all licensed psychologists receive an education that includes a substantial period of close physical proximity among students and faculty. The educational benefits provided under such an environment are integral to the safe and effective practice of psychology and are simply unattainable through coursework and examinations. Those benefits include: direct learning; direct observation; assessment of student development; the understanding and acquisition of professional competence; professional role modeling; and, increased socialization and acculturation activities ...
>
> In determining the sufficiency of an applicant's residency, the Board bases its determination solely on the actual time that an applicant, her Professor and/or fellow students met at the same location to learn the practice of psychology. In this instance, Applicant (Petitioner) documents a total of 500 hours over 51 days throughout her entire doctoral degree program when she was actually physically present with her Capella cohorts and Professors—14 days in June of 2001, 27 days from October 2001 through June 2002 and 14 days in June of 2002. Fifty-one days—less than eight weeks—is certainly not equivalent to "two consecutive academic semesters."
>
> In an effort to convince the Board that she should be granted a license, notwithstanding the fact that she was only physically present for 51 days during her doctoral degree program, in her Post-hearing Brief, Applicant (Petitioner) details the "professional and academic integrity" of Capella's program and distinguishes herself.... Unlike in most of the cases cited [by Petitioner], the issue here is limited solely to whether Applicant (Petitioner) meets the residency requirements. As such, the fact that Capella has established benchmarks, met its stated objectives, believes that its Year-in-Residence "serves as the functional equivalent of a year in residence at a traditional program," and has graduates who received licenses in other states, including three which have residency requirements, is irrelevant to whether Applicant (Petitioner) meets the requirements of Section 6(a) of the Act, 63 P.S. § 1206(a), and most specifically, the residency requirement as set forth in Paragraph (xi) in the definition "doctoral degree in psychology" in Section 201 of the regulations, 49 Pa.Code § 201.

Board's Adjudication at 7–9; Certified Record Vol. III.

Clearly, the Board of Psychology rejected Petitioner's evidence that she was fit for licensure in Pennsylvania. The Board of Psychology's decision was supported by substantial evidence to deny licensure.[4]

---

3. This Court will address Petitioner's arguments out of sequence.

4. The Board of Psychology looked to the commonly used definition of each word to interpret the language of the residency requirement. It employed the Merriam–Webster's Dictionary definition of the words "physical," "presence," and "semester." The Board of Psychology provided an extensive list of examples of its Adjudications in which it applied these definitions to decide whether the applicant met the requirement, including *In the Matter of the Application for a License to Practice Psychology of Julie Ann Knapp, Ph.D., Docket No, 1117–63–2006, In the Matter of the Application for a License to Practice Psychology of Belinda J. Madison, Ph.D., Docket*

## II. Whether the Board of Psychology Improperly Commingled Its Functions, in Violation of Petitioner's Due Process Rights?

■ Petitioner next contends that she was denied due process when the Board of Psychology preliminarily determined that she was not entitled to licensure, and then after a hearing affirmed its own initial determination. Petitioner asserts that this constituted an impermissible commingling of the agency's functions and created a vested interest in the Board of Psychology to affirm its initial decision.

In support, Petitioner cites to our Pennsylvania Supreme Court's decision in *Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992). In *Lyness* [5], the Pennsylvania Supreme Court determined the elements necessary to constitute an impermissible commingling of functions:

This Court has recognized the well-established principle that due process is fully applicable to adjudicative hearings involving substantial property rights.... " Such property rights perforce include the right of an individual to pursue a livelihood or profession, thus triggering the protective mechanism of procedural due process. *A fortiori*, this is true where, as here, an administrative board is empowered by the State to regulate the conduct of professionals

and ultimately *impose sanctions which may include the revocation of a license* to practice medicine in the Commonwealth.

In determining what process is due Pennsylvania citizens, this Court has established a clear path when it comes to commingling prosecutorial and adjudicatory functions. There is a strong notion under Pennsylvania law that even an *appearance* of bias and partiality must be viewed with deep skepticism, in a system which guarantees due process to each citizen....

. . . .

In the instant case, the procedures followed by the Board, pursuant to the applicable administrative regulations, clearly created an unconstitutional intermingling of *prosecutorial and adjudicatory functions* in a single entity. Allegations of misconduct were investigated by the Board's prosecuting attorney, Mr. Hagan, and presented to the Board for its consideration. The Board convened a meeting, discussed the evidence, and determined there was sufficient cause to bring formal charges. (Citations omitted; emphasis added and original).

*Lyness*, 529 Pa. at 542–5, and 547, 605 A.2d at 1207 and 1210

Petitioner contends that, like in *Lyness*, there was an impermissible commingling

---

No. 1793–63–2005, and *In the Matter of the Application for a License to Practice Psychology of Brian J. Mogosky, Ph.D.*, Docket No. 0995–63–06. Final Adjudication and Order of the State Board of Psychology at 6–7.

5. In *Lyness*, Samuel S. Lyness, M.D. (Lyness), had his license to practice medicine and surgery in Pennsylvania revoked by the State Board of Medicine (Board of Medicine). This was the result of alleged acts of sexual impropriety. The Board of Medicine initiated disciplinary hearings, concluded that Lyness

committed these sexual acts, and revoked his license.

On appeal to this Court, the adjudication of the Board of Medicine was upheld. Lyness sought a review of that determination and contended that the Board of Medicine had violated his due process rights by commingling its prosecutorial and adjudicative functions. Our Supreme Court agreed with Lyness and found that because the board acted as prosecutor and ultimate fact-finder it violated notions of fairness and due process. The Supreme Court reversed and remanded.

of the functions of the Board of Psychology. This Court disagrees.

In *Barran v. State Board of Medicine,* 670 A.2d 765 (Pa.Cmwlth.), *petition for appeal denied,* 544 Pa. 685, 679 A.2d 230 (1996). Dr. Peter D. Barran (Barran) had applied to the Pennsylvania State Board of Medicine (Medical Board) for licensure after his license to practice medicine was revoked in Massachusetts because of mental instability. *Id.* at 767. Barran fatally assaulted his housemate with a claw hammer after the housemate ended their relationship. *Id.* Barran pled guilty to voluntary manslaughter, after he initially pled not guilty by reason of insanity. *Id.* Following an early release from prison, Barran applied to the Medical Board for licensure which was provisionally denied. After a hearing, the Examiner recommended that Barran receive a medical license. The Medical Board disagreed with the examiner's recommendations and denied Barran's application. *Id.*

On appeal to this Court, Barran asserted, among other issues, that the Medical Board improperly commingled its functions when it preliminarily denied his application before the entry of the final Adjudication of Denial. This Court rejected Barran's argument:

> Unlike *Lyness,* the subject matter here was an application for a medical license, initiated by Barran, where the Board based its provisional denial on the information disclosed by Barran. *The Board did not institute disciplinary or other prosecutorial action against Barran; it merely issued the provisional license denial, granted Barran's request for a hearing to afford him an opportunity to demonstrate his fitness for licensure and thereafter determined, upon a full review of the record, that Barran should not be licensed to practice medicine in Pennsylvania.* Barran has not established bias or otherwise proved an impermissible commingling of functions performed by the Board. (Emphasis added).

*Id.* at 771.

Here, as in *Barran,* the Board did not initiate any disciplinary or other prosecutorial action. In both matters, the preliminary decisions were based solely on the documentation provided in the applicants' request for licensure. Eventually, the applicants were both granted a formal hearing by the respective Boards, and presented their credentials for licensure. Ultimately, each Board made a final determination after a full and fair hearing and a review of the records. The procedures employed by the Board of Psychology and the Medical Board were identical in that there was no impermissible commingling of its functions. Petitioner was not denied due process.[6]

Accordingly, this Court affirms.[7]

---

**6.** However, Petitioner contends that *Barran* was factually distinguishable from the present matter and not controlling because the Board of Psychology was required to utilize a significant degree of analysis and review of sophisticated educational theories. This Court rejects Petitioner's argument that this is tantamount to a commingling of the Board of Psychology's functions.

**7.** In the argument section of her brief, Petitioner raised these additional issues: that the Board of Psychology improperly relied on prior adjudications; and that the Board of Psychology based its decision on a capricious disregard of Petitioner's evidence. These issues were not raised in her statement of questions involved and are waived. Pa. R.A.P. 2116 provides that: "The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts, or particulars of any kind. This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the

## ORDER

AND NOW, this 12th day of August, 2008, the Adjudication and Order of the State Board of Psychology in the above captioned matter is affirmed.

statement of questions involved or suggested thereby." *See also McCall v. Unemployment Compensation Board of Review,* 717 A.2d 623 (Pa.Cmwlth., 1998) (Issues raised in argument section of a brief are waived if not raised in the statement of questions involved).