# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dawn Renee Smith, Ph.D., : 
                Petitioner : 
                 : 
            v. : No. 529 C.D. 2015
                : Submitted: January 29, 2016
Bureau of Professional and : 
Occupational Affairs, State : 
Board of Psychology, : 
             Respondent : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**          **FILED: June 1, 2016**

Dawn Renee Smith, Ph.D. (Applicant) petitions for review of the Order of the Bureau of Professional and Occupational Affairs, State Board of Psychology (Board) that denied Applicant's application for approval to sit for the psychology licensing examination (Application). On appeal, Applicant argues that the Board abused its discretion in denying her Application because, in determining that Applicant's residency was insufficient to meet the standards under the Board's former regulation at 49 Pa. Code § 41.1(xii), the Board disregarded Applicant's evidence of the number of hours she spent in the classroom and that the Board's residency standard was flawed. Because Applicant was the only one to present

evidence at the hearing, and the Board did not address Applicant's evidence challenging the Board's factual assumptions regarding the face-to-face time "traditional," i.e., non-online, students spend in the classroom, we vacate the Board's Order and remand for further proceedings to consider that evidence.

Applicant, who obtained her Ph.D. in Clinical Psychology from Walden University[1] (Walden) in 2011, submitted her Application to the Board on July 31, 2013. The Board provisionally voted to deny the Application because, *inter alia*, Applicant did not meet the residency requirements for obtaining a "doctoral degree in psychology." (Final Adjudication at 1 (citing *former* 49 Pa. Code § 41.1(xii)).) Applicant appealed the provisional denial of her Application, and a full hearing was held before the Board. At this hearing the following facts were adduced from documentary and testimonial evidence.

Applicant obtained her Bachelor of Science degree in Psychology from Slippery Rock University in 1996 and her Masters of Arts degree in Community Counseling from Kent State University (Kent State) in 1999.[2] After beginning her doctoral degree in Clinical Psychology at Kent State in January 2000 and earning 20 credit hours there, Applicant transferred to Walden in December 2000 to finish that degree, which she earned in 2011. Walden's "doctoral degree program in Clinical Psychology was not accredited by the American Psychological Association (APA) or designated by the Association of State and Provincial Psychology Boards (ASPPB)" at the time of Applicant's attendance. (Final Adjudication, Findings of Fact (FOF) ¶ 16.)

---

[1] Walden is a predominantly online university.

[2] Applicant "is a licensed professional counselor in Ohio and Pennsylvania." (Final Adjudication, Findings of Fact (FOF) ¶ 14.)

Applicant participated in Walden's Year-in-Residency Program[3] requiring her to be physically present at various locations for 48 days of face-to-face instruction, including: a three-week program at Indiana State University in June 2001; nine weekend seminars from September 2001 to June 2002 at Walter Reed Army Hospital; and a second, three-week summer program at Indiana State University in June 2002.[4] Walden professors and adjunct professors taught at these locations during the seminars/programs, and its program was directed by a licensed psychologist. The three-week summer programs required "classroom learning from 8:00 a.m. to 5:00 p.m. with an hour for lunch, Monday through Friday for 15 days." (FOF ¶ 7.) From these two three-week programs, Applicant obtained 40 credit hours. The Walter Reed weekends resulted in a total of 18 credit hours with Applicant attending classes from 6:00 p.m. to 10:00 p.m. on Friday night and from 8:00 a.m. to 4:00 p.m. on Saturdays. "Any additional time spent with students and faculty was done outside of the classroom setting." (FOF ¶ 11.)

The Board reviewed the evidence and concluded that Applicant did not meet all of the requirements for having a "doctoral degree in psychology" and, therefore, could not sit for the licensing exam. (Final Adjudication at 7; Order.) The Board cited its former regulation at 49 Pa. Code § 41.1(xii),[5] which required that, in order

---

[3] As defined by Walden, the Year-in-Residency Program is "the completion of a series of continuously scheduled instructional sessions held at a Walden . . . instructional center and occurring over no more than a 14 month period." (FOF ¶ 15 (internal quotation omitted).)

[4] In addition to these in-person seminars and programs, Applicant took online courses through Walden which she testified required her to spend "about five to seven hours per week" on coursework. (R.R. at 80-81.)

[5] The regulation in effect at the time Applicant began her doctoral program defined a "doctoral degree in psychology" from a program that was not APA accredited or ASPPB designated as meeting the following criteria:

*(Continued…)*

A degree awarded upon successful completion of a program . . . which meets the following criteria:

(i)     Offers training in an accredited college or university.

(ii)    Is clearly identified and labeled as a psychology program, wherever it is administratively housed. Pertinent institutional catalogs and brochures shall specify the intent of the program to educate and train professional psychologists.

(iii)   Stands as a recognizable, coherent organizational entity within the institution.

(iv)    Clearly demonstrates authority and primary responsibility for the required core program (see subparagraph (viii)) and specialty areas (see subparagraph (x)), and for the admission, evaluation and recommendation of students for degrees, whether or not the degree program cuts across administrative lines.

(v)     Comprises an integrated, organized sequence of study.

(vi)    Has an identifiable psychology faculty who provide basic instruction in psychology and a psychologist who is responsible for the program.

(vii)   Has an identifiable body of students who are matriculated in the program for the purpose of qualifying for a degree.

(viii)  Provides in its core program required instruction in ethics as they relate to scientific methods and professional standards, research design and methodology, statistics and psychometrics. In addition, requires students to demonstrate competence in each of the following four substantive content areas (this criterion will typically be met by requiring a minimum of three graduate semester hours in each area): biological bases of behavior—for example, physiological psychology, comparative psychology, neuropsychology, sensation and perception, psychopharmacology; cognitive-affective bases of behavior—for example, learning, thinking, motivation, emotion; social bases of behavior—for example, social psychology, group processes, organizational and systems theory; individual differences—for example, human development, personality theory, abnormal psychology.

(ix)    Includes supervised practicum, internship, field or laboratory training appropriate to the practice of psychology.

(x)     Includes course requirements in specialty areas of psychology.

(xi)    Requires degree candidates to complete a combined total of at least 60 graduate semester hours in the areas described in subparagraphs (viii)—(x).

(xii) *Has a residency requirement that each degree candidate complete a minimum of two consecutive academic semesters as a matriculated student physically present at the institution granting the degree.*

*Former* 49 Pa. Code § 41.1 (emphasis added).  This definition subsequently was amended and currently defines a "[d]octoral degree in psychology" as

*(Continued…)*

4

for a degree to qualify as a "doctoral degree in psychology," an applicant must have spent "a minimum of **two consecutive academic semesters** as a matriculated student **physically present** at the institution granting the degree." (Final Adjudication, Conclusions of Law (COL) ¶ 3 (internal quotation omitted) (emphasis added).) Applying the dictionary definitions of "physical," "presence," and "semester,"[6] the Board stated that it "has repeatedly determined that physical presence requires that the learner be physically in the place where the residency contact is being made for a period of **approximately 36 weeks**." (Final Adjudication at 8 (emphasis added).) The Board relied upon this Court's decision of LaStella v. State Board of Psychology, 954 A.2d 769 (Pa. Cmwlth. 2008), in which this Court adopted the Board's rationale for the residency requirements:

> the purpose of the residency requirement is to guarantee that all licensed psychologists receive an education that includes a substantial period of close physical proximity among students and faculty. The educational benefits provided under such an environment are integral

---

A degree awarded upon successful completion of a program in psychology which, within 1 year from the award of the doctoral degree, meets one of the following criteria:
    (i) Is accredited by the APA or the [Canadian Psychological Association].
    (ii) Is designated by the ASPPB/ National Register Designation Project.
    (iii) Is offered by a foreign college or university whose standards are equivalent to the ASPPB/National Register Designation Project Criteria.

49 Pa. Code § 41.1.
    [6] The Board used Merriam-Webster's Online Dictionary to define these words as: "physical" as "having a material existence"; "presence" as "one that is present: as a: the actual person or thing that is present b: something present of a concrete or visible nature"; and "semester" as "either of the two usually 18-week periods of instruction into which an academic year is often divided" or "a period of six months." (Final Adjudication at 8 (internal quotation and citation omitted).)

5

to the safe and effective practice of psychology and are simply unattainable through coursework and examinations. Those benefits include: direct learning; direct observation; assessment of student development; the understanding and acquisition of professional competence; professional role modeling; and, increased socialization and acculturation activities . . . .

Id. at 773 (internal quotation omitted). Accordingly, the Board held that Applicant's 339 face-to-face hours over 48 days in Walden's Year-in-Residency Program were not sufficient to meet the residency requirement and she had "not met the requirements for licensure [under] Section 6(a) of the [Professional Psychologists Practice] Act [(Act)[7]], 63 P.S. § 1206(a)." (COL ¶ 3.) The Board rejected Applicant's arguments that the distance learning in which she engaged during that program was the functional equivalent of a traditional doctoral program as being irrelevant based on LaStella, wherein this Court upheld the Board's conclusion that a year-in-residency program did not meet the residency requirement. Id. Further, the Board held that the "informal contact hours Applicant spent with other students outside of the classroom setting" could not be used toward the 36-week requirement because "logging onto the Internet and responding to asynchronous postings, regardless of their length and regardless of whether the response is to a professor or a fellow learner, does not provide those in-person benefits" of a traditional residency program. (Final Adjudication at 10.) Applicant now petitions this Court for review.[8]

---

[7] Act of March 23, 1972, P.L. 136, as amended, 63 P.S. § 1206(a).

[8] "In reviewing an order from the Board . . ., this Court may only determine whether necessary findings of fact are supported by substantial evidence or whether it committed an error of law or an abuse of discretion." LaStella, 954 A.2d at 772 n.2.

On appeal,[9] Applicant argues, *inter alia*, that the Board abused its discretion by relying on the 36-week residency requirement and ignoring Applicant's evidence that this requirement is flawed because the Board relies on factual assumptions regarding traditional students' classroom hours without any evidence to support those assumptions. Applicant maintains that the 339 hours that she spent in the classroom exceeded the number of hours traditional students spend in the classroom, and therefore the Board should have found that she met the residency requirement. Moreover, according to Applicant, the Board did not address, or even mention, Applicant's competent evidence identifying the flaws in the Board's continued reliance on the 36-week requirement thereby capriciously disregarding that evidence. Relatedly, Applicant asserts that the Board offered no explanation for why it continued to rely on the 36-week requirement in the face of Applicant's evidence that the Board's assumptions regarding the number of classroom hours traditional students experience throughout an academic year are flawed. Applicant argues that the Board simply relied on LaStella, but LaStella is distinguishable because the applicant in that case did not challenge the continued use of the 36-week requirement.

In response, the Board argues that Applicant did not establish that her 339 hours of face-to-face classroom time over 48 days was the equivalent of being physically present at a location for two consecutive 18-week semesters. The Board asserts that its findings are supported by substantial evidence and cannot be

---

[9] In her Petition for Review, Applicant challenged the Board's preliminary denial of the Application on the basis that it was an impermissible commingling of the Board's prosecutorial and adjudicatory functions. Applicant acknowledges that she does not address this issue in her brief to our Court and indicates that she has decided not to pursue the issue on appeal. (Applicant's Reply Br. at 1.) Therefore, we will not address the issue further.

7

overturned on appeal. The Board further maintains that it did not abuse its discretion in denying the Application but was simply applying the requirements of its regulations, and therefore it did not act fraudulently, in bad faith, or with a blatant abuse of discretion. The Board argues that it considered the hours Applicant spent in the classroom and compared it to the applicable regulation regarding residency and found, in its expertise, that Applicant's hours and educational experience did not comply with the requirement that she spend two consecutive semesters in physical attendance at the institution awarding the degree.

At the hearing, Applicant presented evidence describing the typical academic semester under the traditional educational model.[10] That evidence indicated that these semesters generally are 18-weeks long, but that students attend classes for only 14 to 15 weeks due to semester breaks and time for examinations. (Hr'g Tr. at 34, R.R. at 51.) During the semester, typical students do not attend classes five days a week, eight hours a day; rather, those students attend classes a few hours per day and a few days per week. (Hr'g Tr. at 34, 51, R.R. at 51, 68.) For example, Applicant's evidence indicated that, on average, a traditional student taking four classes likely spends only two and three-quarters hours per week in each of those classes. (Id.) Using this model, **traditional students spend only 165 hours in the classroom over a semester**, and **330 hours in a classroom in two semesters** or an academic year. **Applicant spent 339 hours** in a face-to-face classroom setting during her Year-in-Residency at Walden.

---

[10] In addition to her own testimony regarding her classroom experiences as a traditional doctoral student at Kent State, Applicant offered the testimony of Richard N. Landers, Ph.D., a Psychology professor at Old Dominion University. Dr. Landers explained his research findings regarding the differences between online and traditional classroom learning and described what a typical semester is like for students within the traditional education model. (R.R. at 48-55.)

Applicant was the only one to present evidence at the hearing. However, the Board did not address or discuss **any** of Applicant's evidence in its Final Adjudication. Instead, the Board merely indicating that Applicant did not meet the residency requirement because her 339 hours were "woefully short" of meeting the 36-week requirement and that her online conversations could not be used toward meeting that requirement. (Final Adjudication at 9-10.) We agree with Applicant that the Board should have addressed Applicant's evidence and contentions that the standard the Board used for the residency requirement under its regulations was based on assumptions that have no factual support and are flawed. Not to do so was a capricious disregard of the evidence and an abuse of discretion because

> [a]n agency capriciously disregards competent evidence when it arrives at a decision where the losing party has presented overwhelming evidence that could require the agency to arrive at a different outcome that the agency has not addressed by resolving critical conflicts in the evidence or make essential credibility determinations.

Frog, Switch & Mfg. Co. v. Pennsylvania Human Relations Comm'n, 885 A.2d 655, 667 (Pa. Cmwlth. 2005). See also Lily Penn Food Stores, Inc. v. Pennsylvania Milk Marketing Bd., 472 A.2d 715, 719 (Pa. Cmwlth. 1984) (stating that an agency abuses its discretion when it "capricious[ly] disregard[s] . . . the only material . . . evidence pertinent to the issue").[11] As Applicant was the only one to present evidence at the hearing regarding how much time a traditional

---

[11] In its brief to this Court, the Board provides explanations for its decision, discusses Applicant's evidence regarding the flaws of the 36-week residency requirement, and **asserts a different factual predicate of the classroom time of a traditional student**. (Board's Br. at 13-20.) However, the Board's appellate brief is not the Final Adjudication, and therefore we will not consider the Board's after-the-fact analyses and explanations in lieu of a proper adjudication.

student spends in the classroom, that evidence was "the only material . . . evidence pertinent to the issue," <u>Lily Penn</u>, 472 A.2d at 719, and must be addressed by the Board.

Accordingly, we vacate the Board's Order and remand the matter to the Board for further proceedings to consider Applicant's evidence and render a new adjudication taking that evidence into consideration.

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dawn Renee Smith, Ph.D., : 
                    Petitioner : 
                     : 
         v. : No. 529 C.D. 2015
                     : 
Bureau of Professional and : 
Occupational Affairs, State : 
Board of Psychology, : 
                    Respondent : 

# O R D E R

**NOW**, June 1, 2016, the Order of the Bureau of Professional and Occupational Affairs, State Board of Psychology (Board), entered in the above-captioned matter, is **VACATED**, and the matter is **REMANDED** to the Board in accordance with the foregoing opinion. The Board shall issue its new adjudication within 120 days of this Order.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge