IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jo Shaw,                                 :
                        Petitioner       :
                                         :
            v.                           :   No. 1819 C.D. 2017
                                         :   Submitted: May 11, 2018
Bureau of Professional and               :
Occupational Affairs, State Board of     :
Psychology,                              :
                        Respondent       :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                          FILED: June 5, 2018


            Jo Shaw (Applicant) petitions *pro se* for review of the order of the
Bureau of Professional and Occupational Affairs, State Board of Psychology
(Board) denying her application to sit for the psychology licensing examination
(application) because her doctoral program did not meet the standards under the
Board's former regulation at 49 Pa. Code § 49.1(xii), requiring that the student be
physically present for a minimum period of two consecutive academic semesters at
the location where she is matriculated before she can take the exam. We affirm.

The facts of this case are not in dispute. Applicant began her doctoral program at Walden University (Walden)[1] in the fall of 2007, obtained her Ph.D. in 2015 and submitted her application to the Board on January 19, 2017. The Board provisionally denied her application because Applicant's program failed to meet the residency requirement found in paragraph (xii) of the Board's then-existing regulation's[2] qualifications for a "doctoral degree in psychology." *See former* 49

---

[1] Walden's doctoral program is not accredited by the American Psychological Association (APA) or designated by the Association of State and Provincial Psychology Boards (ASPPB). (Board's Final Adjudication at 6.)

[2] Section 41.31(4) of the Board's regulations requires that first-time applicants who enroll in a graduate degree program in psychology or a field related to psychology prior to July 1, 2008, be evaluated under regulations in effect at the time of enrollment. 49 Pa. Code § 41.31(4). As such, Applicant was evaluated under *former* 49 Pa. Code § 41.1, which defined a "doctoral degree in psychology" from a program that was not APA accredited or ASPPB designated as:

> A degree awarded upon successful completion of a program . . . which meets the following criteria:
>
> (i) Offers training in an accredited college or university.
> (ii) Is clearly identified and labeled as a psychology program, wherever it is administratively housed. Pertinent institutional catalogs and brochures shall specify the intent of the program to educate and train professional psychologists.
> (iii) Stands as a recognizable, coherent organizational entity within the institution.
> (iv) Clearly demonstrates authority and primary responsibility for the required core program (see subparagraph (viii)) and specialty areas (see subparagraph (x)), and for the admission, evaluation and recommendation of students for degrees, whether or not the degree program cuts across administrative lines.
> (v) Comprises an integrated, organized sequence of study.
> (vi) Has an identifiable psychology faculty who provide basic instruction in psychology and a psychologist who is responsible for the program.
> (vii) Has an identifiable body of students who are matriculated in the program for the purpose of qualifying for a

**(Footnote continued on next page…)**

Pa. Code § 41.1(xii).  Applicant appealed and a full hearing was held before the Board.

Applicant testified that she met the residency requirements because she participated in Walden's mandatory Academic Year in Residence (AYR)

_____

**(continued…)**

degree.
(viii) Provides in its core program required instruction in ethics as they relate to scientific methods and professional standards, research design and methodology, statistics and psychometrics.  In addition, requires students to demonstrate competence in each of the following four substantive content areas (this criterion will typically be met by requiring a minimum of three graduate semester hours in each area):  biological bases of behavior—for example, physiological psychology, comparative psychology, neuropsychology, sensation and perception, psychopharmacology; cognitive—affective bases of behavior—for example, learning, thinking, motivation, emotion; social bases of behavior—for example, social psychology, group processes, organizational and systems theory; individual differences—for example, human development, personality theory, abnormal psychology.
(ix) Includes supervised practicum, internship, field or laboratory training appropriate to the practice of psychology.
(x) Includes course requirements in specialty areas of psychology.
(xi) Requires degree candidates to complete a combined total of at least 60 graduate semester hours in the areas described in subparagraphs (viii)—(x).
**(xii) Has a residency requirement that each degree candidate complete a minimum of two consecutive academic semesters as a matriculated student physically present at the institution granting the degree.**

*Former* 49 Pa. Code § 41.1 (emphasis added).

program which involves face-to-face[3] conference sessions and seminar-style interaction among faculty and students, with sessions typically spanning 14 calendar days. Applicant attended the following in-person AYR sessions: a 14-day session in July 2008; a 14-day session in January 2009; and a 14-day session in July 2009, for a total of 42 days. Applicant testified that during these sessions, she was in the classroom from 8:00 a.m. until 6:00 p.m., with a break for lunch, and that she accrued 420 credit hours during the three AYR sessions she attended in 2008-2009. She also attended two professional conferences in 2009 where she accrued an additional 80 credit hours toward her AYR. Any additional time that Applicant spent with other students was conducted online or by telephone outside of the classroom setting.

The Board reviewed the evidence and concluded that Applicant could not sit for the licensing examination because she failed to meet all of the requirements for having a "doctoral degree in psychology." Specifically, it found that Walden's AYR program failed to meet the residency requirement found in subsection (xii) of the Board's former regulation at 49 Pa. Code § 41.1(xii), which "requires a sustained period of physically present interaction for a minimum period of two consecutive academic semesters at the location where the student is matriculated." (Board's Final Adjudication at 9.) The Board also rejected

---

[3] Walden does not have a consistent physical campus, but rather leases space during the academic year and creates a physical campus through such leases.

4

Applicant's argument that the former regulation's residency requirement is unconstitutionally vague. This appeal followed.[4]

Applicant first argues that there is not substantial evidence to support the Board's conclusion that she failed to meet the necessary requirements for a doctoral degree in psychology because she was not physically present for the required amount of time during her AYR. Applicant claims the Board ignored evidence she presented regarding the total number of hours she spent in Walden's AYR program, and abused its discretion by relying on factual assumptions regarding traditional students' classroom hours without any evidence to support those assumptions. We disagree.

The Board relied upon this Court's decision in *LaStella v. Bureau of Professional and Occupational Affairs, State Board of Psychology*, 954 A.2d 769 (Pa. Cmwlth. 2008), *aff'd,* 970 A.2d 432 (Pa. 2009), wherein we adopted the Board's rationale for the residency requirement:

> [t]he purpose of the residency requirement is to guarantee that all licensed psychologists receive an education that includes a substantial period of close physical proximity among students and faculty. The educational benefits provided under such an environment are integral to the safe and effective practice of psychology and are simply unattainable through coursework and examinations.

---

[4] Our review of an order of the Board is limited to determining whether the Board committed an error of law or an abuse of discretion, and whether necessary findings of fact are supported by substantial evidence. *LaStella v. State Board of Psychology*, 954 A.2d 769, 772 n.2 (Pa. Cmwlth. 2008), *aff'd* 970 A.2d 432 (Pa. 2009).

Those benefits include: direct learning; direct observation; assessment of student development; the understanding and acquisition of professional competence; professional role modeling; and, increased socialization and acculturation activities . . . .

*Id.* at 773.

In this case, the Board rejected Applicant's argument that her AYR was the functional equivalent of the Board's residency requirement. Applying the dictionary definition of the terms "physical" and "presence," the Board determined that, at best, Applicant was physically present for only 420 hours over a span of approximately 42 days[5] during Walden's 2008-2009 academic year. The Board found that 42 days out of Applicant's entire doctoral program was not equivalent to the regulation's requirement that Applicant be physically present at Walden, the institution granting her degree, for two academic semesters. Moreover, Applicant's in-person AYR sessions were not continuous as required by the regulation, but instead consisted of three two-week sessions with a gap of six months in between each session. Because there is substantial evidence to support the Board's conclusion that she was not physically present at Walden for two consecutive academic semesters, Applicant did not meet the residency requirement. *See O'Toole v. Bureau of Professional and Occupational Affairs,*

___

[5] While Applicant claims that she was also physically present at two professional conferences during the 2008-2009 academic year, the Board found it could not award residency credit for these conferences under *former* 49 Pa. Code § 41.1(xii) because Applicant was not a matriculating student at the conferences, they were not conducted on a Walden campus, and she did not receive credit from the APA and ASPPB. Even if the Board had credited Applicant with this time, she cannot overcome the fact that her periods of residency were not continuous.

*State Board of Psychology* (Pa. Cmwlth., No. 2108 C.D. 2011, filed August 13, 2012) 2012 WL 8700469 (affirming the Board's decision that, under *former* 49 Pa. Code § 41.1(xii), "Fifty-one days – less than eight weeks – is certainly not equivalent to 'two consecutive academic semesters.'");[6] *LaStella*, 954 A.2d at 773.

Despite Applicant's claim, the Board did not ignore her testimony regarding credit hours; to the contrary, it accepted her testimony that she completed 420 credit hours during her AYR sessions in 2008-2009. Moreover, in footnote four of its Final Adjudication, the Board acknowledged testimony from Applicant's husband regarding the difference between online education and traditional "brick and mortar" schools. However, Applicant's reliance upon the total number of hours she spent in Walden's AYR sessions is inapposite as the Board's former regulation speaks in terms of consecutive semesters, not a minimum number of credit hours. It is undisputed that Applicant only spent two weeks at a time at her AYR sessions, with six months in between each session where she was not in "close physical proximity among students and faculty." *LaStella*, 954 A.2d at 773. It is also clear that Applicant did not have a continuous and regular presence with Walden faculty and students for any more than 14 days at a time, and she had no more than 42 days total of such face-to-face contact over her entire doctoral program. The Board did not delve into the quagmire of minimum number of credit hours per academic semester, given the fact that

[6] Pursuant to § 414 of this Court's Internal Operating Procedures, this unreported opinion is not binding precedent but is cited only for its persuasive value. *O'Toole* is particularly persuasive as the facts are closely aligned to those presented here by Applicant.

7

Applicant clearly could not meet the "continuous" requirement in the regulation, and we discern no error or abuse of discretion in the Board's decision.

Applicant also argues that the former regulation's residency requirement is unconstitutionally vague as it speaks in terms of semesters rather than a minimum number of days or hours of face-to-face instruction. She appears to argue that credit hours are a clearer measurement of time in order to properly account for both online and traditional college environments.

"[A] statute or regulation is unconstitutionally vague where it either traps the innocent by failing to give a person of ordinary intelligence reasonable opportunity to know what is prohibited so that he may act accordingly, or results in arbitrary and discriminatory enforcement in the absence of explicit guidelines for its application." *Toms v. Bureau of Professional and Occupational Affairs*, 800 A.2d 342, 349 (Pa. Cmwlth. 2002) (citing *Watkins v. State Board of Dentistry*, 740 A.2d 760 (Pa. Cmwlth. 1999)). Here, the Board's former regulation provides a definitive standard as it requires an applicant to complete "a minimum of two consecutive academic semesters as a matriculated student physically present at the institution granting the degree." *Former* 49 Pa. Code § 41.1(xii). As the Board notes, the term "'[s]emester' is defined as 'either of the two usually 18-week periods of instruction into which an academic year is often divided' or 'a period of six months.'" (Board's Final Adjudication at 14 (citing http://www.merriam-webster.com/dictionary/semester).) A regulation is not void for vagueness merely because it uses a unit of measurement different than the one an applicant prefers. Given the ordinary meaning and commonly used definitions of physical, presence

8

and semester, the regulation as written provided sufficient guidance to applicants so they could know what was expected of them – they must be physically present as a matriculated student on campus for a continuous academic year.[7]

Accordingly, the order of the Board is affirmed.

_____
DAN PELLEGRINI, Senior Judge

---

[7] Applicant's reliance on this Court's unreported case, *Smith v. Bureau of Professional and Occupational Affairs, State Board of Psychology* (Pa. Cmwlth., No. 529 C.D. 2015, filed June 1, 2016) 2016 WL 3067824, is misplaced. While that case is factually similar, it does not stand for propositions Applicant advances herein. The applicant in *Smith* also obtained her Ph.D. from Walden, attending its AYR program. When she applied to the Board to sit for the psychology licensing examination, the applicant presented evidence that she completed 339 hours in the classroom and argued that this was sufficient to satisfy the regulation's residency requirement because it exceeded the hours traditional students spend in the classroom. The Board denied her application. We did not address that argument, but vacated the Board's order because it capriciously failed to address or discuss any of the applicant's evidence in its final adjudication, merely indicating the applicant was "woefully short" of the residency requirement under *former* 49 Pa. Code § 41.1(xii). *Id.* at Slip Op. 9, *4.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jo Shaw,                          :
               Petitioner    :
                         :
         v.                  :   No. 1819 C.D. 2017
                         :
Bureau of Professional and     :
Occupational Affairs, State Board of    :
Psychology,                      :
             Respondent   :

# **O R D E R**

AND NOW, this 5<u>th</u> day of <u>June</u>, 2018, the Final Adjudication and Order of the Bureau of Professional and Occupational Affairs, State Board of Psychology, in the above-captioned matter, is affirmed.

_____
DAN PELLEGRINI, Senior Judge